

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Robert D. Penn
County Attorney
Reeves County
Pecos, Texas

Dear Sir:

Opinion No. O-2414
Re: Can fishermen, trying to circumvent
rules and regulations promulgated by the
Red Bluff Water Power Control District
by going into New Mexico and placing
their boats in the Pecos River and float-
ing down the river into the waters of the
District, be prosecuted under Article
7652a, Vernon's Civil Statutes?

We have received your letter requesting the opinion
of this department upon the above stated question. Your letter
reads in part as follows:

"The Red Bluff Water Power Control District
has constructed a dam on the Pecos River between
Reeves and Loving Counties for the impounding of
waters from said river for irrigation in its seven
component districts below the dam.

"Under Article 7652a of the Revised Civil Sta-
tutes, entitled 'Rules and Regulations as to Re-
creational and Business Privileges; Penalties,'
provide among other things:

"Sub-sec. 1. The Board of Directors of such
Districts shall have and are hereby clothed with
the power and authority to adopt and promulgate
all such reasonable rules and regulations as are
deemed necessary for preserving the sanitary con-
dition of all waters controlled by the District,
to prevent waste of water, or the unauthorized use

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Robert D. Penn, Page 2

thereof, to regulate residence, boating and camping and all recreational and business privileges upon any body of water, and any body of land owned or controlled by such Districts,.....etc.

"Sub-sec. 2. Provides a punishment by a fine not to exceed $100.00 or imprisonment in the county jail not to exceed 30 days or both such fine and imprisonment for the violation of such rules and regulations after due promulgation thereof.

"The District has promulgated certain rules and regulations in compliance with the procedure outlined in Sub-sec. 2 of said Article 7652a.

"Certain fishermen in trying to circumvent these rules and regulations, go into New Mexico, place their boats in the river and float down the river into the waters of the lake, catch their fish and go back up the river into New Mexico and disembark. At no time do they get off the water of the lake onto the land adjacent thereto which is owned and controlled by the District.

"The question involved is: Can these fishermen be prosecuted under Article 7652a, of the Revised Civil Statutes for violating the rules and regulations as promulgated by the District under these circumstances?"

We interpret your request to be: May the Board of Directors of the District promulgate rules and regulations which may form the basis for a criminal prosecution? Therefore, in this opinion we are not attempting to pass upon the validity of the rules and regulations as promulgated by the District, but are only passing upon the question of whether rules and regulations promulgated by the District, otherwise valid, may be made the basis of criminal prosecution under Article 7652a, Vernon's Civil Statutes.

The Constitution of Texas, Article 16, Section 59 (a) and (b), which became effective October 2, 1917, reads as follows:

"Sec. 59a. The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, and reclamation and drainage of its overflowed lands, and other lands needing drain-

age, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

"(b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

The Legislature, for the purposes of giving effect to Article 16, Section 59 (a) and (b) of the Constitution, supra, enacted Chapter 2, Title 128, Vernon's Civil Statutes, and particular attention is directed to Articles 7471 and 7652a of Title 128.

Article 7471 reads, in part, as follows:

"In the conservation and utilization of water declared the property of the State, the public welfare requires not only the recognition of uses beneficial to the public well being, but requires as a constructive public policy, a declaration of priorities in the allotment and appropriation thereof; and it is hereby declared to be the public policy of the State and essential to the public welfare and for the benefit of the people that in the allotment and appropriation of the waters defined in Article 7467, of the Revised Civil Statutes of Texas of 1925, preference and priority be given to the following uses in the order named, to-wit:

"....

Honorable Robert D. Penn, Page 4

"7. Recreation and pleasure."

Article 7652a reads, in part, as follows:

"Sub-sec. 1. The Board of Directors of such Districts shall have and are hereby clothed with the power and authority to adopt and promulgate all such reasonable rules and regulations as are deemed necessary for preserving the sanitary condition of all waters controlled by the District, to prevent waste of water, or the unauthorized use thereof, to regulate residence, boating and camping and all recreational and business privileges upon any body of water, and any body of land owned or controlled by such Districts, . . . (Emphasis ours)

"Sub-sec. 2. Any violation of the provisions of this Act, or such rules and regulations, after due promulgation thereof as hereinafter provided for, shall be unlawful, and shall be punished by a fine not to exceed the sum of One Hundred ($100.00) Dollars, or imprisonment in the county jail of the county where such offense takes place, for a time not to exceed thirty (30) days, or by both such fine and imprisonment . . ."

In writing this opinion, we are assuming that the Board of Directors of the District duly adopted and published the rules and regulations, as required by Article 7652a.

By Article 16, Section 59 of the Constitution, supra, the Legislature is empowered to authorize the organization of public or quasi-public corporations charged with the duty of securing to all the people all of the benefits of conservation, protecting riparian rights, if any exist, while saving the waters that would otherwise be lost, and at the same time securing to all of the people of the State the rights of fishing and recreation. The management and control of these public or quasi-public corporations is vested solely in a Board of Directors elected by the qualified voters of the territory wherein such district is located. Chapter 2, Title 128, Vernon's Civil Statutes, and amendments thereto.

The right of property, and the use thereof, is subject to the police power of the State. Lombardo v. City of

Dallas, 73 SW (2d) 475; 30 Tex. Jr. 120, Sec. 58. As to the power of the Legislature to authorize the Directors of the Red Bluff Water Power Control District to adopt and promulgate reasonable rules and regulations, Cooley, on Constitutional Limitations, 8th Edition, Vol. I, page 231, has the following to say:

"Boards and Commissions now play an important part in the administration of our laws. The great social and industrial evolution of the past century, and the many demands made upon our Legislature by the increasing complexity of human activities, have made essential the creation of these administrative bodies and the delegation to them of certain powers. Though legislative power cannot be delegated to boards and commissions, the Legislature may delegate to them administrative functions in carrying out the purposes of a statute and various governmental powers for the more efficient administration of the law."

Undoubtedly the Legislature is without power to delegate to a board or to an executive officer the power to declare what shall actually constitute a criminal offense. This has been pointed out by numerous authorities, many of which are cited in Ruling Case Law. See 6 R.C.L. 182. Such a delegation of power is held to be prohibited because of the division of powers provided for in the constitutions of the states and the Federal constitution.

However, as is further stated by this text, it is competent for the Legislature to authorize a commission to prescribe certain duties on which the law may operate in imposing a penalty and in effectuating the broad general purpose designed in enacting the law. This observation is well-supported by the authorities cited. In other words, the Legislature may set out the general purpose of the law and leave it to some administrative body to fill in the details by rules and regulations.

An indispensible requirement is that the statute itself provide the penalty for the violation of the rules and regulations prescribed by the administrative body. There must in all cases be statutory authority for declaring that an act amounts to a crime.

Thus where the statute itself prescribes the punishment for violations of the regulations of the administrative body, it cannot be said that it is unconstitutional on the

Honorable Robert D. Penn, Page 6

theory that legislative power to create a crime is delegated to such a body.

A specific illustration of the application of this principle is presented in the case of United States v. Grimaud, 220 U.S. 506, 31 S. Ct. 480, 55 U.S. (L.ed.) 563, where it is held that legislative power delegated to the Secretary of Agriculture by the Forest Reserve Act, making criminal the violation of the rules and regulations covering forest reservations made and promulgated by him under authority of such statutes is constitutional. A detailed discussion of this case at this point may prove helpful.

By the act of March 3, 1891 (26 Stat. at L. 1103, Chap. 561, U.S. Comp. Stat. 1901, page 1537), the President of the United States was authorized, from time to time, to set apart and reserve, in any state or territory, public lands, wholly or in part covered with timber or undergrowth, whether of commercial value or not, as public forest reservations.

By subsequent legislation the Secretary of Agriculture, under the power given him by various statutes, was authorized, to "make provisions for the protection against destruction by fire and depredations upon the public forests and forest reservations....; and he may make such rules and regulations and establish such service as will insure the objects of such reservations; namely, to regulate their occupancy and use, and to preserve the forests thereon from destruction; and any violation of the provisions of this act or such rules and regulations shall be punished," as prescribed in Revised Statutes, Sec. 5388, U.S. Comp. Stat. 1901, p. 3649, - which, as amended, provided for a fine of not more than $500.00 and imprisonment for not more than twelve months, or both, at the discretion of the court.

Under the authority of these statutes, the Secretary of Agriculture promulgated and established certain rules for the purpose of regulating the use and occupancy of the public forest reservations, and among those so promulgated was the following:

"Regulation 45. All persons must secure permits before grazing any stock in a forest reserve (with certain exceptions)."

Honorable Robert D. Penn, Page 7

The defendants, Grimaud and Carajous were charged with violating this rule, and on trial contended that the Forest Reserve Act was unconstitutional insofar as it delegated to the Secretary of Agriculture the power to make rules and regulations and make violation thereof a penal offense. This contention was sustained by the trial court and the case was appealed to the United States Supreme Court, where the trial court was reversed.

In a rather exhaustive opinion by Mr. Justice Lamar, the court made some very illuminating statements which we quote as follows:

"That 'Congress cannot delegate legislative power is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution,' Marshall Field & Co. vs. Clark, 143 U.S. 692, 35 L. ed. 309, 12 Sup. Ct. Rep. 495. But the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense.

"It is true that there is no act of Congress which, in express terms, declares that it shall be unlawful to graze sheep on a forest reserve. But the statutes from which we have quoted declare that the privilege of using reserves for ' all proper and lawful purposes' is subject to the proviso that the person so using them shall comply 'with the rule and regulations covering said forest reservation.' The same act makes it an offense to violate those regulations; that is, to use them otherwise than in accordance with the rules established by the Secretary. Thus the implied license under which the United States had suffered its public domain to be used as a pasture for sheep and cattle, mentioned in Buford v. Houtz, 133 U.S. 326, 33 L. ed. 620, 10 Sup. Ct. Rep. 305, was curtailed and qualified by Congress, to the extent that such privilege should not be exercised in contravention of the rules and regulations. Wilcox v. Jackson, 13 Pet. 513, 10 L. ed. 271.

"If, after the passage of the act and the promulgation of the rule, the defendants drove and grazed their sheep upon the reserve, in violation of the regulations, they were making an unlawful use of the government's property. In doing so they thereby made themselves liable to the penalty imposed by Congress."

In a subsequent case arising in Texas, our Court of Criminal Appeals enunciated much the same rule in connection with the Tick Eradication Law, which at the time appeared in Article 7312 et seq. (R.C.S. 1911), but which is now codified as Article 1525c of the Penal Code. Mulkey v. State, 83 Tex. Cr. 1, 201 S.W. 991.

This law created the Live Stock Sanitary Commission and prescribed its duties and powers. Under that law the Commission was "authorized and empowered to establish, maintain and enforce such quarantine lines and sanitary rules as it may deem necessary,.... quarantine any district, county or part of county, within this state when it shall determine the fact that cattle or other live stock in such district, county or part of county, are affected.... to make and promulgate rules and regulations, which shall permit and govern the inspection,.... treatment, handling and method and manner of delivery and shipment of cattle and other live stock from a quarantine district, county or part of county into other districts.... shall give notice of such rules and regulation by proclamation issued by the governor." Vernon's Sayles' Ann. Civ. St. 1914, Art. 7314.

Other provisions in the law provided that no cattle or other livestock could be moved from one quarantined district to another except in the manner provided by the commission.

Under the authority of these statues, the Live Stock Sanitary Commission promulgated, in the manner prescribed, order III, which provided:

"It shall be unlawful for any cattle to be moved into, within, or from said area until they have been inspected and certified to by an inspector of

Defendant Mulkey was charged with violation of order III, and, on trial, was convicted in the lower court, from which he appealed to the court of criminal appeals. He contended that the information on which he was convicted charged np offense because it charged the violation of an order prescribed by the Live Stock Sanitary Commission, which was not an act of the Legislature, and that the Legislature could not delegate the law-making power to said commission in violation of Section 1, Art. 3 of the Constitution.

The Court of Criminal Appeals affirmed the trial court, citing numerous authorities sustaining its holding. The court stated:

"Under these authorities we think the authority given to our live stock sanitary commission to quarantine live stock and to adopt rules and regulations to enforce the same, when properly promulgated by the Governor, is not the exercise of Legislative functions by the commission, and that such rules and regulations so properly promulgated are valid, and the violation thereof may be made an offense. This results in holding that the indictment herein was valid in charging an offense."

We do not consider the case of Dockery v. State, 93 Tex. Cr. R. 220, 247 S.W. 508, which was cited by you in your brief as controlling. Although the Mulkey case was decided less than five years before the Dockery case by the same court, the court does not consider or cite the Mulkey case as being in conflict.

In the statute considered in the Dockery case, no provision was made for promulgating the rules and regulations of the State Fire Marshal. The Legislature attempted to delegate to the marshal, the power and authority to prescribe rules applicable throughout the State, without apparent reason for not prescribing such rules itself. In the Mulkey case and under the statutes being considered in this opinion, definite methods of promulgation are provided, and the rules promulgated are to be applicable only to limited portions of the State. The fire marshal in the Dockery situation was given unlimited discretion in formulating rules and regulations in regard to fire escapes, without any indication of the purpose to be

accomplished by such regulations and rules. We believe that if there had been any real necessity for giving the fire marshal such a wide discretion, the statute might have been upheld.

At any rate, we see by the Mulkey case, that the empowering of a board or commission to prescribe certain rules and regulations and making the violation of such rules and regulations a penal offense with prescribed penalties is not, per se, unconstitutional.

The Legislature itself has passed laws regulating the rights of the public to the waters of the river and the lake, and has provided for the protection of these rights by authorizing the Board of Directors to promulgate reasonable police and sanitary regulations.

The Court of Civil Appeals, in the case of Briggs v. Red Bluff Water Power Control District, 131 SW (2d) 274, specifically held that the rules and regulations as promulgated by the Board of Directors of the District were reasonable. The rules and regulations of the Red Bluff Water Power Control District were again upheld by the Court of Civil Appeals at El Paso in an opinion handed down in the case of Ronald E. Roberson, et al v. Red Bluff Water Power Control District on June 6, 1940, (not yet reported).

The facts in the Diversion Lake Club v. Heath case, 86 SW (2d) 441, cited by you, is clearly distinguishable from the facts involved in the instant case. In the Diversion Lake Club case a private corporation, which has no authority in law to appropriate the water of a navigable stream, was involved. In this case the Club attempted to appropriate the waters of a navigable stream to the exclusion of the public, and for the purpose of creating a private hunting and fishing preserve.

In the instant case, the rules and regulations promulgated by the Red Bluff Water Power Control District are applicable to all persons alike. No attempt is made to exclude

Honorable Robert D. Pann, Page 11

the public from fishing, or otherwise enjoying the waters of the District. Recreational privileges and facilities of the District are offered to the general public on terms that are equal to all, and under rules and regulations which have been judicially determined to be reasonable and proper.

As to your suggestion that a criminal prosecution would not lie in this instance, because of the fact that the penalty provided in Article 7652a is not carried over into the Penal Code, your attention is called to the fact that Article 7652a was not enacted until the year 1935, ten years after the last codification of the Penal Code.

Therefore, in view of the foregoing authorities you are respectfully advised that it is the opinion of this department that the Board of Directors of the Red Bluff Water Power Control District may promulgate reasonable rules and regulations which may form the basis of a criminal prosecution; however, we are not undertaking to pass upon the validity of any rule or regulation thus promulgated or whether there has been a violation of any rule or regulation under the particular facts presented by you.

Trusting that this satisfactorily disposes of your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

D. Burle Daviss
Assistant

APPROVED JUL 11, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

DBD:AW

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE